**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**LAURA F.,**[1]

       **Plaintiff,**

                             **Case No. 2:23-cv-0068**
      **v.**                        **Magistrate Judge Norah McCann King**

**LELAND DUDEK,**[2]
**Acting Commissioner of Social Security,**

       **Defendant.**

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Laura F. for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision denying that application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Acting Commissioner's decision.

## I.    PROCEDURAL HISTORY

On June 18, 2018, Plaintiff filed her application for benefits, alleging that she has been disabled since February 10, 2010. R. 101, 114, 196–201.[3] The application was denied initially and upon reconsideration. R. 116–23. Plaintiff sought a *de novo* hearing before an administrative

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Leland Dudek, the current Acting Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

[3] Plaintiff also filed an application for disability insurance benefits, but she later withdrew that Title II claim. R. 53, 191, 194–95, 202–05.

law judge ("ALJ"). R. 138–40. ALJ Kevin Kenneally held a hearing on December 15, 2021, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 68–91. In a decision dated January 7, 2022, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from June 18, 2018, Plaintiff's alleged disability onset date, through the date of that decision. R. 53–62. That decision became final when the Appeals Council declined review on September 15, 2022. R. 16–22. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On September 20, 2024, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 13.[4] On February 10, 2025, the case was reassigned to the undersigned. ECF No. 14. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. § 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a

---

[4]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted);

*see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations

omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and

quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091,

at *4 (D.N.J. Mar. 27, 2018).

　　　The substantial evidence standard is a deferential standard, and the ALJ's decision cannot

be set aside merely because the Court "acting de novo might have reached a different

conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli

v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported

by substantial evidence, we are bound by those findings, even if we would have decided the

factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*,

2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or

substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d

1178, 1182 (3d Cir. 1992)).

　　　Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic

or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)

("The search for substantial evidence is thus a qualitative exercise without which our review of

social security disability cases ceases to be merely deferential and becomes instead a sham.");

*see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9,

2016).  The Court has a duty to "review the evidence in its totality" and "take into account

whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));

*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is

4

supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

## B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability

to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 46 years old on June 19, 2018, the date on which her application was filed. R. 60. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 55.

6

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: bilateral hearing loss, Ménière's disease, post-traumatic stress disorder (PTSD), generalized anxiety disorder, and major depressive disorder. *Id*. The ALJ also found that Plaintiff's alleged chronic upper and lower back pain was not a medically determinable impairment. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 56–57.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 57–60. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a purchasing contracts clerk. R. 60.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g*., jobs as a ticket taker, a sales attendant, and an advertising material distributor—existed in the national economy and could be performed by Plaintiff despite her lessened capacity. R. 61. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from June 18, 2018, Plaintiff's application date, through the date of the decision. R. 61–62.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision be reversed and remanded for further proceedings. *Plaintiff's Brief,* ECF No. 9; *Plaintiff's Reply Brief*, ECF No. 12. The Acting Commissioner takes the position that the decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 11.

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.    Reviewing State Agency Psychiatric Consultants

After Plaintiff filed her application, the state agency requested additional information

from her:

> 1/11/19 (9:05 AM) CALLED CLMT TO F/U ON ADLS. LEFT MESSAGE AND
> SENT LETTER STATING THAT WE WOULD NEED TO RECEIVE FORMS
> BY 1/21/19 OR A DECISION WOULD BE MADE ON THE EVIDENCE IN
> FILE.
>
> 1/14/19 S/W CLMT FORMS WERE MAILED 2 WEEKS AGO. CLMT IS
> WILLING TO RECOMPLETE. REMAILED IN CASE WE DO NOT RECEIVE.
>
> 1/24/19 S/W CLMT, WHO RECEIVED ALL ADL AND WORK HX FORMS. I
> SAID THAT IF WE DO NOT RECEIVE COMPLETED FORMS BY 2/3/19, A
> DETERMINATION WILL BE MADE ON THE EVIDENCE IN FILE. CLMT
> DECLINES TO COMPLETE BY PHONE.

R. 95. The file also reflects the following: "ADDITIONAL EVIDENCE IS NEEDED TO

FULLY ASSESS THE SEVERITY OF THE CLMT'S CONDITION, BUT THE *CLMT HAS*

*FAILED TO COOPERATE*. SEE ATTEMPTS TO OBTAIN INFO IN CLAIM

COMMUNICATIONS.'" *Id*. (emphasis added).

On February 5, 2019, Arthur Lewy, Ph.D., conducted an initial review of Plaintiff's

medical record on behalf of the state agency. R. 92–100. According to Dr. Lewy, Plaintiff's

depressive, bipolar and related disorders, including her anxiety and obsessive-compulsive

disorders, were severe impairments. R. 95–96. In conducting the Psychiatric Review Technique

("PRT"), however, Dr. Lewy concluded that there "is insufficient evidence to substantiate the

presence of" anxiety and obsessive compulsive disorders under Listing 12.06. R. 96. Under the

heading "PRT — Additional Explanation[,]" Dr. Lewy explained, "A history of anxiety is noted

with a prescription of benzodiazepine. There is no evidence since that time and functioning is

unknown. Medical clarification is needed." *Id*.

A consultative examination was scheduled because "[t]he evidence as a whole, both medical and non-medical, is not sufficient to support a decision on the claim[,]" but Plaintiff failed to appear for that examination. R. 107. The state agency contacted Plaintiff and her representative on multiple occasions for additional information and regarding her failure to appear:

> 6/18/19 CALLED AUTH REP BARBARA COMERFORD (201-444-4493) SPOKE TO JULIE -- SHE WILL REVIEW CHART AND CALL ME BACK ONCE SHE CONFIRMS IF CLMT HAS A CURRENT PSY TP [psychiatric treating physician] AS WELL AS ANY OTHER CURRENT TP'S WE MAY BE AWARE OF.
>
> 6/28/19 CALLED AUTH REP BARBARA COMERFORD (201-444-4493) SPOKE TO JULIE WHO ENSURED SHE WILL REMIND CLMT TO KEEP HER UPCOMING 7/1/19 PSY CE SCHEDULED W/ DR GOLDSTEIN AT 5PM.
>
> 7/8/19 CALLED AUTH REP BARBARA COMERFORD (201-444-4493) SPOKE TO JULIE: REMINDER MADE FOR AUTH REP TO HAVE CLMT PROVIDE A VALID REASON AS TO WHY THE PSY CE ON 7/1/19 WAS NOT KEPT? DEADLINE IS SET FOR 7/18/19. REP IS AWARE THAT IF WE DO NOT HEAR FROM CLMT AND/OR AUTHORIZED REP'S OFFICE BY 7/18/19 A FINAL UNFAVORABLE DETERMINATION WILL BE MADE ON CLMT'S DISABILITY CLAIM BASED ON EVIDENCE IN FILE.
>
> *       *       *
>
> 7/2/19 CALLED PSY CE PROVIDER DR GOLDSTEIN LFT MS SG FOR HIM TO CONFIRM IF CLMT KEPT 7/1/19 5PM PSY CE APPT OR NOT?
>
> 7/3/19 CALLED PSY CE PROVIDER DR GOLDSTEIN LFT MS SG FOR HIM TO CONFIRM IF CLMT KEPT 7/1/19 5PM PSY CE APPT OR NOT?
>
> 7 /8/19 CALLED PSY CE PROVIDER DR GOLDSTEIN LFT MSSG FOR HIM TO CONFIRM IF CLMT KEPT 7/1/19 5PM PSY CE APPT OR NOT?
>
> 7/8/19 PSY CE PROVIDER DR GOLDSTEIN C/B: CLMT DID NOT KEEP HER 7/1/19 5PM PSY CE AS SCHEDULED.

R. 106–07. Plaintiff never provided a valid reason for failing to appear for the consultative examination. R. 107–08. Her file reflects the following notation:

ADDITIONAL MER IS NEEDED TO ASSESS THE CLMT'S OVERALL FUNCTIONAL ABILITIES. SINCE THE EVIDENCE IN FILE IS INSUFFICIENT TO OBJECTIVELY ASSESS THE CLMT'S ALLEGED MDI'S, A PSYCHIATRIC CE WAS REQUESTED. *HOWEVER, THIS PSYCH CE WAS NOT KEPT AND THE CLMT AS WELL AS THE AUTHORIZED REPRESENTATIVE BOTH DID NOT RESPOND TO OUR REQUEST TO PROVIDE A VALID REASON AS TO WHY THE AFOREMENTIONED PSYCH CE WAS NOT KEPT. AS IT STANDS, THE EVIDENCE IN FILE REMAINS INSUFFICIENT IN ORDER TO OBJECTIVELY ASSESS THE CLMT'S OVERALL FUNCTIONAL ABILITIES. THEREFORE, DISABILITY IS DENIED DUE TO FAILURE TO COOPERATE PROTOCOL.* THEREFORE, THIS RECON IS HEREBY AFFIRMED. AS A SIDE NOTE, THE CLMT'S HEARING IMPAIRMENT IS ASSESSED W/ NON-EXERTIONAL RFC WHICH DOES NOT PRECLUDE HER FROM BEING ABLE TO AVOID THE NORMAL HAZARDS OF THE WORKPLACE AND THIS NON-EXERTIONAL RFC WOULD RESULT IN A PRW EXPEDIENT DENIAL PER VOCATIONAL RULE 204.00 WHEN USED AS A FRAMEWORK (SEE ALSO SSR 85-15) THEREFORE, SINCE THE CLMT'S AFOREMENTIONED NON-EXERTIONAL RFC FOR HER HEARING IMPAIRMENT WOULD RESULT IN A DENIAL, THIS T 16 DI RECON CLAIM IS BEING DENIED AS INSUFFICIENT DUE TO FAILURE TO COOPERATE ISSUES (DID NOT KEEP THE SCHEDULED PSYCH CE) AS OVERALL THE INSUFFICIENT PRT PSYCH RATING RENDERS THE WHOLE CLAIM AS INSUFFICIENT. THEREOFRE [sic], AS STATED ABOVE, DISABILITY IS DENIED AND RECON IS HEREBY AFFIRMED.

R. 107 (emphasis added); *see also* R. 108.

Amy Brams, Ph.D., reviewed Plaintiff's medical record upon reconsideration for the state agency on July 16, 2019. R. 102–13; *see also* R. 114 (reflecting this consultant's credentials). Dr. Brams agreed on reconsideration that Plaintiff's depressive, bipolar, and related disorders as well as her anxiety and obsessive-compulsive disorders were severe impairments. R. 108. Dr. Brams also agreed with Dr. Lewy that the information in Plaintiff's file was insufficient, noting that Plaintiff and her representative failed to respond to state agency calls and letters:

A history of anxiety is noted with a prescription of a benzodiazepine. There is no evidence since that time and functioning is unknown. Medical clarification is needed.

47 year old recon alleges worsening 2/2019 and indicates "hearing loss, anxiety, depression, and low blood pressure which cause her to experience dizziness,

nausea, headaches, constant ringing in both ears, shortness of breath, imbalance, low blood pressure, back pain, leg pain, and sensitivity near her shoulders". Case was rated as insufficient 2/5/19.

Updated MER does not provide a psych evaluation and/or MSE.

*Claimant missed CE and has not responded to multiple calls and contact with the auth rep and call-in letters.*

*Insufficient*[.]

R. 109 (emphasis added).

### B.    Reviewing State Agency Medical Consultants

Raymond Briski, M.D. conducted an initial review of Plaintiff's medical record on behalf of the state agency on February 5, 2019. R. 92–100; *see also* R. 101 (reflecting this consultant's credentials). Dr. Briski agreed that Plaintiff's medically determinable impairments could reasonably be expected to produce pain or other symptoms, but disagreed that the objective medical evidence substantiated Plaintiff's allegations about the intensity, persistence, and functionally limiting effects of those symptoms, citing to the longitudinal treatment records and opining that Plaintiff's statements were only partially consistent with the record evidence. R. 97. According to Dr. Briski, Plaintiff had no exertional, manipulative, or visual limitations. R. 97–98. She was unlimited in her ability to stoop, kneel, crouch, and crawl, but could only occasionally climb ramps/stairs/ladders/ropes/scaffolds and balance. *Id*. She was limited in her ability to hear but was unlimited in her ability to speak:

Claimant has a documented sensorineural hearing loss, with speech discrimination scores and speech frequency hearing thresholds that are abnormal, but not at listing level severity. No documentation of Meniere's disease, as alleged. The 10/23/18 hearing evaluation report documents no equilibrium disorder, but the subsequent 12/7/18 report by the same examiner does report a history of dizziness. In any case, limitations are provided due to this on the RFC. Claimant can communicate in the workplace and respond to alarms/other pertinent workplace sounds, but should not work in high ambient noise areas.

11

R. 98. According to Dr. Briski, Plaintiff had an unlimited ability to tolerate extreme cold, extreme heat, wetness, humidity, vibration, fumes, odors, dusts, gases, and poor ventilation, but should avoid concentrated exposure to noise and even moderate exposure to hazards. R. 98–99.

Consultant Cirilo Encarnacion[5] reviewed Plaintiff's medical record upon reconsideration for the state agency on June 18, 2019, and affirmed the initial review. R. 102–13.

### C.    Dan Wilkin, D.O.

On February 2, 2021, Dan Wilkin, D.O., Plaintiff's treating family physician, completed a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)." R. 378–83. Dr. Wilkin opined that Plaintiff could frequently (meaning from one-third to two-thirds of the time) lift and carry up to 10 pounds and occasionally (meaning very little up to one-third of the time) lift up to 20 pounds. R. 378. Asked to identify the medical or clinical findings supporting this opinion, Dr. Wilkin responded: "Pt. donated her left kidney, should not lift heavy material. Pt. also has chronic upper & lower back pain." *Id*. Dr. Wilkin further opined that, at one time without interruption, Plaintiff could sit for 3 hours; stand for 2 hours; and walk for 1 hour. R. 379. Plaintiff could sit for a total of 4 hours in an eight-hour workday, could stand for a total of 4 hours, and could walk for a total of 3 hours, *i.e.*, for a combined total of 11 hours in an eight-hour workday. *Id*. Dr. Wilkin denied that Plaintiff required the use of a cane to ambulate. *Id*. Dr. Wilkin explained, "Pt. has severe hearing loss, leads to anxiety which requires medication. Pt's equilibrium is sometimes off leading to issues." *Id*. Dr. Wilkin also opined that Plaintiff could occasionally (meaning up to one-third of the workday) use her hands for reaching overhead and in all other directions, and could handle, finger, feel, and push/pull. R. 380 (referring to the first two pages of the form when asked to identify the medical or clinical findings that support his

---

[5] This consultant's credentials are not immediately apparent.

assessment or limitations). Dr. Wilkin further opined that Plaintiff could use her feet to

occasionally operate foot controls. *Id.* (again referring to the first two pages of the form for

support for his assessment). According to Dr. Wilkin, Plaintiff could occasionally climb stairs

and ramps, stoop, kneel, crouch, and crawl, but could never climb ladders or scaffolds, nor could

she balance. R. 381 (again referring to the first two pages of the form for support). Asked

whether any of Plaintiff's impairments affect her hearing or vision, Dr. Wilkin responded,

"patient has poor hearing & vision impairment[.]" *Id.* Dr. Wilkin opined that Plaintiff could

avoid ordinary hazards in the workplace; could read ordinary newspaper or book print; could

view a computer screen; and could determine differences in the shape and color of small objects

such as screws, nuts, or bolts, but Plaintiff could not hear and understand simple oral

instructions, nor could she communicate simple information or read very small print. *Id.* (noting

that "Pt. needs contact lenses to see properly & had 2 holes in her retina, needed laser surgery").

Plaintiff could occasionally be exposed to dust, odors, fumes, pulmonary irritants, and vibrations,

but could never be exposed to unprotected heights, moving mechanical parts, humidity and

wetness, extreme cold, and extreme heat, nor could she operate a vehicle; Plaintiff must have a

quiet environment (library). R. 382 (referring for support to the first two pages and fourth page

of the form). Plaintiff could perform such activities as shopping and traveling without a

companion for assistance, and could ambulate without using a wheelchair, walker, or 2 canes or

2 crutches; could walk a block at a reasonable pace on rough or uneven surfaces; could use

standard public transportation; could climb a few steps at a reasonable pace with the use of a

single hand rail; could prepare a simple meal and feed herself; could care for her personal

hygiene; and could sort, handle, or use paper/files. R. 383. Asked when Plaintiff's limitations

were first present, Dr. Wilkin responded, "hearing loss started approx.[.] 1992" and would last

for 12 consecutive months. *Id*.

## V.     DISCUSSION

### A.      Mental RFC

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to

perform a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she (1) can occasionally climb ramps and stairs, (2) can never climb ropes, ladders, or scaffolds, (3) can occasionally balance, stoop, kneel, crouch, or crawl, (4) can never be exposed to unprotected heights, moving mechanical parts, or operating a motor vehicle, (5) no exposure to vibrations as well as loud and very loud noise levels, (6) is limited to performing simple routine tasks and making simple work related decisions, and (7) can frequently interact with the general public, co-workers, and supervisors.

R. 57. In crafting the mental portion of this RFC, the ALJ considered Plaintiff's mental health

history, as follows:

> With respect to her mental health, the claimant was prescribed a service dog due to her anxiety in April 2018 (Exs. 12F, 13F). In April 2020, she underwent a psychiatric evaluation. Notes indicate she only had one prior assessment in April 2018 due to a DUI substance abuse IRDC legal requirement and reported her representative recommended she return for treatment. During the assessment, the claimant endorsed difficulty sleeping, crying spells, feeling a bit depressed and like she is an emotional mess, and being prescribed Xanax by her primary care physician. On examination, she was calm, cooperative, and pleasant and denied any psychotic thoughts. The examiner noted her symptoms are mild (Ex. 11F at 3-5).

> At a July 2020 medication management follow-up visit, the claimant discussed housing fears, which is making her anxious and a bit depressed. However, on examination, she was cognitively intact, calm, cooperative, and pleasant with a so-so mood and sad affect. She also reported medication compliance with slight improvement (Ex. 11F at 20). In October 2020, she stated that she is "doing okay" with her medication and her symptoms are improving. However, it was noted she has poor coping skills and uses projection, which leads to worsening anxiety, irritability, and depression (Ex. 11F at 23).

> In January 2021, the claimant reported fluctuating depression, anxiety, episodic crying, and helplessness due to financial and housing concerns. She also endorsed poor appetite and smoking medicinal marijuana one time to help improve it. In

April 2021, she continued to endorse situational fluctuating depression, frustration, and anxiety, and stated that her appetite improved and mostly isolates in her room (Ex. 11F at 6, 10). In June 2021, she admitted that an increase in Celexa helped improve her energy level and depression, but she still cries 1-4 times a week if "not entertained or distracted." She also started individual therapy that she will receive monthly. At follow-up visits in August and October of 2021, the claimant continued to report situational symptoms related to her mental impairments, medication and therapy compliance, and showed no worsening on mental status examination. It was further noted at the latter visit that she volunteers at her friend's pet shop and is learning to groom dogs (Ex. 11F at 12, 14, 16).

Although the claimant endorsed monthly therapy visits, the record only contains one March 2021 visit with a therapist. She reported anxiety and depression but had a mental status examination within normal limits (Ex. 8F at 4-5, 11).

R. 58–59; *see also* R. 60 ("Additionally, mental impairments are at most moderate[6] in nature with no emergency room visits or hospitalizations.").

---

[6] At step three of the sequential evaluation, the ALJ found that Plaintiff had moderate limitations in the broad areas of functioning under the Paragraph B criteria of the relevant Listing:

In understanding, remembering, or applying information, the claimant has a moderate limitation. At the hearing, the claimant alleged she has problems remembering what she did yesterday. She also indicated in her function report that she does not follow spoken instructions well. However, she is able to follow written instructions very well. She was also noted to be cognitively intact at examinations and exhibited average intelligence and memory and intellectual functioning within normal limits (Exs. 5E; 8F at 5; 11F).

In interacting with others, the claimant has a moderate limitation. At the hearing, the claimant alleged she does not like to go out and does not physically see or speak to people. She further stated in her function report that she does not get along with others. However, although it was noted that her projection leads to worsening irritability, the claimant consistently presented as calm, cooperative, and pleasant. She also reported volunteering at her friend's pet shop and socializing on Facebook (Hearing Testimony; Exs. 5E; 11F at 16).

With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation. The claimant indicated in her function report that she cannot pay attention long. She also reported multiple episodes of crying spells and dizzy spells a week. However, the claimant included watching television with closed captioning as one of her hobbies, which requires some level of concentration. Moreover, she presented as cognitively intact or with normal intellectual functioning at examinations (Exs. 5E at 4; 8F at 5; 11F at 12).

Plaintiff argues that substantial evidence does not support the ALJ's mental RFC because it is based solely on the ALJ's lay opinion. *Plaintiff's Brief*, ECF No. 9, pp. 7–11. Plaintiff complains that, in crafting this RFC, the ALJ "neither cited to, nor relied upon any medical opinion or prior administrative medical finding in formulating the RFC." *Id*. at 8. Plaintiff notes that neither the reviewing state agency psychological consultants (who found insufficient evidence) nor Plaintiff's treating providers offered any opined functional limitations, resulting in "a complete absence of medical opinions regarding Plaintiff's level of mental functioning." *Id*. at 8–9. Thus, according to Plaintiff, the ALJ improperly relied on his own lay interpretation of the medical evidence to find that Plaintiff's mental impairments were merely moderate. *Id*. at 9–11. Plaintiff argues the ALJ "had a duty to obtain an opinion regarding Plaintiff's mental functioning either through contacting Plaintiff's treating providers, obtaining a medical expert *or ordering a consultative examination*." *Id*. at 9–10 (emphasis added); *see also Plaintiff's Reply Brief*, ECF No. 12, pp. 1–3 (insisting that the ALJ had a duty to further develop the record where there were no medical opinions regarding Plaintiff's mental functioning). Plaintiff's arguments are not well taken.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. § 416.945(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining

---

As for adapting or managing oneself, the claimant has experienced a moderate limitation. The record reflects the claimant suffers from situational fluctuating depression and anxiety as well as poor coping skills. However, she had a mental status examination within normal limits at a March 2021 psychiatric assessment and noted improvement on medication. She also discussed volunteering at her friend's pet shop and learning dog grooming at her most recent medication management visit (Exs. 8F, 11F).

R. 56–57.

16

the claimant's RFC. 20 C.F.R. § 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d

356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency

consultants—must make the ultimate disability and RFC determinations.") (citations omitted).

When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer*

*v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly

established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also*

*Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose

whether to include "a limitation [that] is supported by medical evidence, but is opposed by other

evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence

of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to

include a limitation that is not supported by any medical evidence if the ALJ finds the

impairment otherwise credible").

      In the instant case, contrary to Plaintiff's contention, the ALJ did not rely on simply his

lay interpretation when crafting Plaintiff's mental RFC. As detailed above, the ALJ appropriately

considered, *inter alia*, that in April 2020, Plaintiff's mental symptoms were rated "mild" during a

psychiatric examination; upon examination in July 2020, Plaintiff was cognitively intact, calm,

cooperative, and pleasant and reported medication compliance with slight improvement; a mental

status examination was within normal limits in March 2021; in April 2021, Plaintiff endorsed

situational fluctuating depression, frustration, and anxiety; in August and October 2021, Plaintiff

continued to report situational symptoms, but she showed no worsening of her symptoms on

mental status examination; she was able to follow written instructions very well; she exhibited

average intelligence and memory and her intellectual functioning fell within normal limits; she

socialized on Facebook and watched television with closed captioning, which requires some

level of concentration; and she volunteered at her friend's pet shop and was learning to groom dogs. R. 56–60; *see also Orr v. Comm'r Soc. Sec.*, 805 F. App'x 85, 89 (3d Cir. 2020) (concluding that the ALJ did not err in finding that the claimant did not meet or medically equal Listing 12.02 where the claimant had, *inter alia*, moderate difficulties with concentration, persistence, and pace because the claimant "spent time online searching for auto parts; he read magazines; he watched a lot of politics and history on television; and he got six to seven hours of sleep a night, despite being awakened by discomfort in his leg"); *Parks v. Comm'r of Soc. Sec.*, 401 F. App'x 651, 655 (3d Cir. 2010) ("[H]e also testified that he had the ability to read, watch television, and play video games. The ALJ found that these activities required a degree of concentration, persistence, or pace. We agree and hold that when all of the testimony is considered together, substantial evidence supports the ALJ's finding of moderate limitations in concentration, persistence, or pace."); *Bonner v. Saul*, No. 1:19-CV-1370, 2020 WL 4041052, at *15 (M.D. Pa. July 17, 2020) (finding substantial evidence supported the ALJ's RFC for, among other limitations, unskilled work involving only simple, routine tasks that are not performed at a production rate pace where the record reflected, *inter alia*, "relatively normal mental status findings, including that Bonner exhibited coherent thought processes, a normal attitude and affect, good insight, normal thought content, intact recent and remote memory, and intact cognitive functioning"); *Millner v. Comm'r of Soc. Sec.*, No. 2:18-CV-13473 (SDW), 2019 WL 3369781, at *6 (D.N.J. July 25, 2019) (finding that Plaintiff had a moderate limitation in concentrating, persisting, or maintaining pace where "Plaintiff had no serious problems completing calculations, nor was he overly distractible or slow. . . . Plaintiff reported completing many daily tasks that require some concentration, persistence and pace, such as watching television and reading for pleasure.") (citations omitted). The ALJ adequately accommodated

limitations flowing from Plaintiff's mental limitations when he limited Plaintiff to, *inter alia*, performing simple routine tasks and making simple work related decisions. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 211 (3d Cir. 2019) (stating that "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace'" and explaining that this conclusion "flows directly from our decision in *Ramirez* [*v. Barnhart*, 372 F.3d 546, 554 (3rd Cir. 2004)]"); *Long v. Kijakazi*, No. 20-CV-6336, 2022 WL 1204131, at *14 (E.D. Pa. Apr. 22, 2022) (concluding that the ALJ provided a valid explanation for finding that the claimant is capable of performing simple tasks where the ALJ "repeatedly pointed out Plaintiff's 'normal' mental status examinations[,]" "emphasized Plaintiff's ADLs, which included such tasks as childcare for three children (including a one-year-old), house cleaning, woodworking, laundry and shopping[,]" and the claimant's "progress notes consistently showed full orientation, alertness, logical thought processes, fair or normal insight and judgment, and intact reality testing, decision making, attention, concentration, and memory"); *cf. Menkes v. Astrue*, 262 F. App'x 410, 412–13 (3d Cir. 2008) ("The term 'simple routine tasks,' in the context of the disability proceedings, generally refers to the non-exertional or mental aspects of work. For example, performing a 'simple routine task' typically involves low stress level work that does not require maintaining sustained concentration.").

To the extent that Plaintiff suggests that an ALJ must support every RFC limitation with a matching medical opinion, Plaintiff is mistaken. As previously noted, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. § 416.927(e), 416.946(c); *see also Chandler*, 667 F.3d at 361 ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted).

"There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *see also Mays v. Barnhart*, 78 F. App'x 808, 813 (3d Cir. 2003) ("Primarily, the ALJ is responsible for making a residual functional capacity determination based on the medical evidence, and he is not required to seek a separate expert medical opinion."). Notably, "the ALJ is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision." *Chandler*, 667 F.3d at 362.

Plaintiff also argues that the ALJ had the duty to more fully develop the mental health record by, *inter alia*, ordering a psychiatric consultative examination, and that his failure to do so requires remand. *Plaintiff's Brief*, ECF No. 9, pp. 9–10; *Plaintiff's Reply Brief*, ECF No. 12, pp. 1–3. However, and as detailed above, the state agency did in fact schedule a psychiatric consultative examination in July 2019. R. 106–07. Despite reminders, Plaintiff never appeared for that scheduled examination and never provided any justification for that failure. R. 106–08. Accordingly, Dr. Brams' finding on reconsideration that there was insufficient evidence regarding Plaintiff's mental impairments and related functionality is directly related to Plaintiff's unexplained failure to appear for a scheduled psychiatric consultative examination. R. 107–09 (noting, *inter alia*, that "Claimant missed CE [consultative examination] and has not responded to multiple calls and contact with the auth rep and call-in letters"). Under these circumstances, Plaintiff's assertion that an expert's opinion regarding Plaintiff's mental impairments was necessary and that the ALJ erred by failing to further develope the record by, for example, ordering a consultative examination "is particularly rich, given Claimant's unexplained failure to appear" for her previously scheduled consultative examination. *McGill v. Comm'r of Soc. Sec.*, No. CIV.A. 13-374, 2014 WL 1317562, at *2 (W.D. Pa. Mar. 28, 2014). Notably, a claimant

may be found not disabled if that claimant, without "good reason[,]" fails or refuses to submit to a consultative examination. 20 C.F.R. § 416.918(a); *see also Walker v. Barnhart*, 172 F. App'x 423, 427 n.2 (3d Cir. 2006) ("The Commissioner's denial of benefits as a sanction for a claimant's refusal to submit to a consultative examination has been upheld as a proper exercise of administrative discretion.") (citations omitted); *Glass v. Colvin*, No. CIV.A. 14-237-E, 2015 WL 5732175, at *1 n.1 (W.D. Pa. Sept. 30, 2015) ("Plaintiff claims that the ALJ should have obtained a consultative examination or medical expert testimony in order to develop the record more fully. However, the state agency did in fact schedule a consultative examination, for which Plaintiff failed to appear, despite the fact that she was given several reminders. As a consequence, the state agency psychologist . . . found that there was insufficient evidence to complete a psychiatric review technique assessment due to Plaintiff's failure to cooperate. . . . Under the regulations, Plaintiff's application could have been denied outright for her failure to appear at her examination.") (citing 20 C.F.R. § 416.918(a)). Accordingly, "Plaintiff's argument that the ALJ failed to develop the record fully is particularly unpersuasive in this case." *Glass*, 2015 WL 5732175, at *1 n.1 (stating further that "the ALJ clearly fulfilled his duty. Here, a consultative examination was scheduled by the state agency, but Plaintiff failed to show up for it. Nothing in the record indicates that Plaintiff or her counsel requested a new examination date, nor have Plaintiff or her counsel provided an explanation for her failure to appear").

In short, the Court concludes that the ALJ fulfilled his duty in considering the record and his findings regarding Plaintiff's mental RFC are consistent with the record evidence and enjoy substantial support in the record.

### B.    Physical RFC and Opinion Evidence

Plaintiff also challenges the ALJ's physical RFC determination. *Plaintiff's Brief*, ECF

No. 9, pp. 11–18; *Plaintiff's Reply Brief*, ECF No. 12, pp. 3–4. In crafting the physical RFC,[7] the

ALJ considered years of medical evidence, including, *inter alia*, Plaintiff's 2016 diagnosis of

bilateral Meniere's disease; evidence that, in August 2018, she had no complaints of dizziness or

vertigo; evidence that, at a December 2018 hearing test, Plaintiff reported hearing loss and

dizziness for five years or more and previous use of hearing aids with satisfactory results, and t

testing revealed sensorineural hearing loss for which the specialist recommended hearing aids;

and evidence that, in March 2021, Plaintiff did not wear hearing aids because she found them to

be uncomfortable in a group setting. R. 59. The ALJ went on to explain, *inter alia*, that the

record evidence did not support the intensity or persistence of Plaintiff's subjective allegations of

limitations:

> In sum, the claimant alleges that her medically determinable impairments preclude
> her from sustaining regular and continuous work. However, the nature, scope, and
> findings from her longitudinal treatment records are not supportive of the intensity
> or persistence of her subjective allegations. As discussed in the foregoing, the
> medical evidence reflects that the claimant's treatment has been limited and
> conservative. Specifically, *there has been no treatment for her physical
> impairments for the past three years* so there is no medical evidence to support the
> frequency of dizziness (also there is no vestibular testing within the record).
> Additionally, mental impairments are at most moderate in nature with no
> emergency room visits or hospitalizations. When considered as a whole, the
> evidence reasonably supports a finding that the claimant is limited by her
> impairments, but those limitations, as well as her subjective complaints, are
> adequately accommodated by the assigned residual functional capacity of light
> work; occasionally climb ramps and stairs; never climb ropes, ladders, or scaffolds;
> occasionally balance, stoop, kneel, crouch, or crawl; never be exposed to
> unprotected heights, moving mechanical parts, or operating a motor vehicle; no

---

[7] As detailed above, the ALJ limited Plaintiff to light exertional work with certain limitations, including, *inter alia*, that Plaintiff can occasionally climb ramps and stairs; can never climb ropes, ladders, or scaffolds; can occasionally balance, stoop, kneel, crouch, or crawl; can never be exposed to unprotected heights, moving mechanical parts, or operating a motor vehicle; and can have no exposure to vibrations as well as loud and very loud noise. R. 57.

> exposure to vibrations as well as loud and very loud noise levels; is limited to performing simple routine tasks and making simple work related decisions; and only frequent interaction with the general public, co-workers, and supervisors.

R. 60 (emphasis added). In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination in this regard. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Davis v. Saul*, No. CV 18-4288, 2019 WL 2525447, at *5 (E.D. Pa. June 18, 2019) ("Contrary to Plaintiff's assertion, it was not improper for the ALJ to consider evidence of gaps in treatment when assessing the limiting effects of Plaintiff's impairments."); *cf. Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 60 (3d Cir. 2017) (finding substantial evidence supported the ALJ's finding that, *inter alia*, "a significant treatment gap" undermine the claimant's credibility); *Massaro v. Comm'r of Soc. Sec.*, 84 F. App'x 175, 179 (3d Cir. 2003) (affirming where the ALJ "questioned" the claimant's testimony based on, *inter alia*, "gaps in treatment").

Plaintiff, however, argues that the ALJ's conclusory rejection of the opinions of the state agency medical consultants and of treating physician Dr. Wilkin precludes judicial review of the physical RFC. *Plaintiff's Brief*, ECF No. 9, pp. 11–18; *Plaintiff's Reply Brief*, ECF No. 12, pp. 3–4. This Court disagrees.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. His decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter,* 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence.  *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant

treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[8] the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 416.927 *with* 20 C.F.R. § 416.920c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 416.920c(c).

The applicable regulation emphasizes that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 416.920c(a). As to the supportability factor, the regulation provides that "[t]he more relevant the objective medical evidence and

---

[8] As previously noted, Plaintiff's claim was filed on June 18, 2018.

supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 416.920c(c)(1). As to the consistency factor, the regulation provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 416.920c(c)(2).

The applicable regulation further requires the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 416.920c(b). As previously noted, "[s]upportability and consistency are the most important factors. . . . ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency." *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa. 2023) (citations omitted); *see also Stamm v. Kijakazi*, 577 F. Supp. 3d 358, 370 (M.D. Pa. 2021) ("Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors.").

In the present case, in crafting Plaintiff's physical RFC, the ALJ considered, *inter alia*, the opinions of the reviewing state agency medical consultants and of Dr. Wilkin, as follows:

> Turning to the opinion evidence, the medical consultants at the state level opined that the claimant has no exertional limitations but is limited to can only occasionally climb ramps, stairs ladders, ropes, or scaffolds, and balance; can communicate in the workplace and respond to alarms/other pertinent workplace sounds but should not work in high ambient noise areas; and should avoid concentrated exposure to noise and even moderate exposure to hazards (Exs. 1A, 3A). These opinions are

25

not supported and inconsistent with the record discussed above, which demonstrates that the claimant's severe physical impairments limit her to a reduced range of light work. Accordingly, these opinions are not persuasive.

Dr. Dan Wilkin, a treating physician, opined in February 2021 that the claimant is limited to light-to-sedentary work and can only use her hands and feet occasionally; never climb ladders or scaffolds, and balance; occasionally climb stairs and ramps, stoop, kneel, crouch, and crawl; occasionally tolerate exposure to dusts, odors, fumes, pulmonary irritants, and vibrations; avoid all exposure to unprotected heights, moving mechanical parts, operating a motor vehicle, humidity, wetness, extreme cold or heat; and can only tolerate quiet noise conditions (Ex. 7F). Dr. Wilkin's opinion is somewhat supported by his notes, which indicate the claimant has chronic upper and lower back pain and donated her left kidney (Ex. 7F at 1). However, as this is not consistent with the overall record discussed above, which demonstrates no objective medical evidence of back pain or left kidney problems, the undersigned finds this opinion only persuasive as to the light work limitation.

R. 59.

Turning first to the ALJ's consideration of the reviewing state agency medical consultants, Plaintiff complains that the ALJ's conclusory assertion that these consultants' opinions were unsupported and inconsistent with the record evidence provides no meaningful explanation and does not build an accurate and logical bridge from the evidence to the ALJ's conclusion. *Plaintiff's Brief*, ECF No. 9, pp. 14–15; *Plaintiff's Reply Brief*, ECF No. 12, pp. 3–4. Plaintiff goes on to argue that this failure is particularly confusing because the ALJ adopted all postural, communicative, and environmental limitations despite saying that those opinions were unsupported and inconsistent, leaving the Court "to guess as to whether it was the degree of limitation opined that the ALJ rejected, or the presence of the limitations at all." *Plaintiff's Brief*, ECF No. 9, p. 15. This Court disagrees.

Contrary to Plaintiff's assertion, the Court need not guess which portion of the reviewing state agency medical consultants' opinions the ALJ rejected. As detailed above, the ALJ properly noted that these consultants found that Plaintiff had no exertional limitations. R. 59, 97, 110. In considering these opinions, the ALJ specifically explained that these state agency opinions were

not supported by and were inconsistent with the record, "which demonstrates that the claimant's severe physical impairments limit her to a reduced range of light work." R. 59. In other words, the ALJ found that the medical record warranted greater exertional limitations than those found by the state agency medical consultants. *Id*.

Turning to Dr. Wilkin's opinion, Plaintiff argues that the ALJ's consideration of this provider's opinion is confusing and internally inconsistent as it relates to Plaintiff's back pain: Plaintiff particularly complains that, although the ALJ referred to Plaintiff's chronic back pain and left kidney donation as supportive of this opinion, the ALJ also referred to that same evidence to conclude that the opinion is inconsistent "with the overall record[.]" *Plaintiff's Brief*, ECF No. 9, pp. 15–16 (citing R. 55–56, 59). The Court is not persuaded that this issue requires remand. Even assuming (without deciding) that the ALJ erred in this determination, any such error is harmless in light of Dr. Wilkin's opinion that Plaintiff was limited to light exertion. R. 59. As noted above, the ALJ determined that Plaintiff had the RFC for a limited range of light work and, as previously explained by the Court, substantial evidence supports that determination.

Finally, Plaintiff insists that the ALJ erred in apparently discounting, without explanation, the state agency opinion that Plaintiff should not work in a high ambient noise environment and should avoid concentrated exposure to noise and Dr. Wilkin's opinion that Plaintiff could tolerate a quiet environment, similar to a library setting. *Plaintiff's Brief*, ECF No. 9, pp. 17–18 (citing R. 59, 98, 111, 382). According to Plaintiff, this error was not harmless because two of the three jobs identified by the vocational expert—*i.e.*, sales attendant and advertising material distributor—would be eliminated because they are performed in moderate noise level environments and only the third job, that of ticket taker, is considered to present a quiet noise level. *Id*. at 17 (citations omitted). Plaintiff contends that the number of available ticket taker

jobs (7,232 nationally) "begs the question of whether the ALJ would find that this would be a significant number, given that there is no bright-line rule as to what constitutes a significant number." *Id*. at 17–18 (citing *Young v. Astrue*, 519 F. App'x 769, 772 (3d Cir. 2013)). Plaintiff's argument is not well taken.

Even if the Court were to accept, for present purposes only, that the jobs of sales attendant and advertising material distributor were unavailable to Plaintiff, "the ALJ need only establish that a claimant is capable of performing one job that exists in significant numbers in the national economy." *Pierznik v. Comm'r Soc. Sec.*, No. 22-2369, 2023 WL 4014468, at *2 (3d Cir. June 15, 2023), *cert. denied sub nom. Pierznik v. O'Malley*, 144 S. Ct. 1035, 218 L. Ed. 2d 190 (2024); *see also Penrose v. Comm'r of Soc. Sec.*, No. 1:20-CV-00011, 2020 WL 7640585, at *7 (D.N.J. Dec. 23, 2020) ("At the end of the five-step analysis, an ALJ need only establish that a claimant is capable of performing one job that exists in significant numbers in the national economy."). As Plaintiff observes, "there is no precise estimate for what constitutes 'significant numbers' of jobs under the Social Security Act." *Young v. Astrue*, 519 F. App'x 769, 772 (3d Cir. 2013) (citing 20 C.F.R. § 404.1566). As noted above, the ALJ found that Plaintiff's RFC would permit the performance of the job of ticket taker of which, according to the vocational expert, there are 7,232 jobs nationally. R. 61, 88. Other than her own speculation, Plaintiff has provided no authority that this number is not significant, *see Plaintiff's Brief*, ECF No. 9, pp. 17–18, and the Court cannot conclude as much. *See Ahmad v. Comm'r of Soc. Sec.*, 531 F. App'x 275, 278 (3d Cir. 2013) ("In light of our determination in *Craigie v. Bowen*, 835 F.2d 56, 58 (3d Cir. 1987), that 200 jobs in the regional economy was a 'clear indication' that other meaningful work in the national economy existed, we conclude that the ALJ did not err by concluding that the 569 jobs available as a surveillance system monitor was evidence of other work in significant

numbers in the national economy."); *Williams v. Comm'r of Soc. Sec.*, No. CV 20-12254, 2022

WL 279838, at *10 (D.N.J. Jan. 31, 2022) ("Notably, the Third Circuit has found that as few as

200 and 569 jobs nationwide to be 'significant,' which is far fewer than the jobs available for

Williams's representative occupations.") (citing, *inter alia*, *Craigie*, 835 F.2d at 58); *Benton v.*

*Comm'r of Soc. Sec.*, No. 1:18-CV-09478-NLH, 2019 WL 2285490, at *7 (D.N.J. May 29, 2019)

(finding, *inter alia*, that 1,940 tree planter jobs to be a "significant" number of jobs).

Accordingly, the Court is not persuaded that remand on this basis is warranted.

In short, for all these reasons, the Court concludes that the ALJ's findings regarding

Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the

record, as does his consideration of the opinions of the reviewing state agency medical

consultants and of Dr. Wilkin.

### C.    Third-Party Statement

Plaintiff also complains that the ALJ erred in failing to evaluate the third-party statement

of her friend, Kevin Carney. *Plaintiff's Brief*, ECF No. 9, pp. 18–21. The ALJ expressly

addressed this statement as follows:

> Kevin Carney, the claimant's friend, opined on the claimant's functioning in a
> third-party function report (Ex. 6E [R. 272–79]). Pursuant to 20 CFR 416.920c, no
> written analysis is required for statements on issues reserved to the Commissioner,
> statements that do not consider functional abilities, and for statements submitted by
> non-medical third parties.

R. 60. Plaintiff contends that the ALJ's failure to expressly analyze Mr. Carney's statement

violates regulatory and case authority. *Plaintiff's Brief*, ECF No. 9, pp. 18–21 (citations omitted).

Plaintiff argues that, although the ALJ was free to reject Mr. Carney's statements, he was

obligated to provide his reasons for doing so. *Id*. at 21. According to Plaintiff, the Court cannot

meaningfully review the ALJ's rejection of this third-party statement without an adequate explanation and, therefore, the Court should remand the action for further consideration. *Id*.

The Court is not persuaded that this issue requires remand. Even assuming, for the sake of argument, that the ALJ erred in failing to expressly analyze Mr. Carney's statement, Plaintiff has not explained how any such error harmed her. *See Plaintiff's Brief*, ECF No. 9, pp. 18–21. Plaintiff does not identify any particular portion of Mr. Carney's statement or functional limitation based on that statement that the ALJ's RFC failed to accommodate or that required any different or additional RFC limitation. *See id*. Based on this record, the ALJ's error in this regard, if any, is harmless and does not require remand. *See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."); *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011) ("An error is 'harmless' when, despite the technical correctness of an appellant's legal contention, there is also 'no set of facts' upon which the appellant could recover.") (citation omitted); *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d. Cir. 2005) (finding that "a remand is not required here because it would not affect the outcome of the case").

## VI.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Acting Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  April 15, 2025                      *s/Norah McCann King*
                                         NORAH McCANN KING
                                         UNITED STATES MAGISTRATE JUDGE